No. 12-1052

# In The
# United States Court of Appeals
## For the Fourth Circuit

GRETCHEN S. STUART, M.D.; JAMES R. DINGFELDER, M.D.; DAVID A. GRIMES, M.D.;
AMY BRYANT, M.D.; SERINA FLOYD, M.D.; DECKER & WATSON, INC., d/b/a Piedmont
Carolina Medical Clinic; PLANNED PARENTHOOD OF CENTRAL NORTH CAROLINA; A
WOMAN'S CHOICE OF RALEIGH, INC.; PLANNED PARENTHOOD HEALTH SYSTEMS,
INC.; TAKEY CRIST, M.D.; TAKEY CRIST, M.D., P.A., d/b/a Crist Clinic for Women, on
behalf of themselves and their patients seeking abortions,

*Plaintiffs-Appellees,*

v.

JANICE E. HUFF, M.D., in her official capacity as President of the North Carolina Medical
Board; ROY COOPER, in his official capacity as Attorney General of North Carolina; LANIER
M. CANSLER, in his official capacity as Secretary of the North Carolina Department of Health
and Human Services; JIM WOODALL, in his official capacity as District Attorney ("DA") for
Prosecutorial District ("PD") 15B; TRACEY E. CLINE, in her official capacity as DA for PD14;
DOUG HENDERSON, in his official capacity as DA for PD 18; BILLY WEST, in his official
capacity as DA for PD 12; C. COLON WILLOUGHBY, JR., in his official capacity as DA for
PD 10; BENJAMIN R. DAVID, in his official capacity as DA for PD 5; JIM O'NEILL, in his
official capacity as DA for PD 21; ERNIE LEE, in his official capacity as DA for PD 4, and their
employees, agents and successors,

*Defendants,*

AND

JOHN M. THORP, JR., M.D.; GREGORY J. BRANNON, M.D.; MARTIN J.
MCCAFFREY, M.D.; CHIMERE COLLINS; DALLENE HALLENBECK; TRACIE
JOHNSON; LANITA WILKS; ASHEVILLE PREGNANCY SUPPORT SERVICES;
PREGNANCY RESOURCE CENTER OF CHARLOTTE,

*Appellants.*

_____

On Appeal from the United States District Court
for the Middle District of North Carolina
_____

## BRIEF FOR APPELLEES
_____

*(Caption Continued On Inside Cover)*

KATHERINE LEWIS PARKER
AMERICAN CIVIL LIBERTIES UNION
OF NORTH CAROLINA LEGAL
FOUNDATION
P.O. Box 28004
Raleigh, North Carolina 27611
(919) 834-3466

ANDREW D. BECK
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, New York 10004
(212) 284-7318

WALTER DELLINGER
ANTON METLITSKY
LAURA CONN
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300

BEBE J. ANDERSON
CENTER FOR REPRODUCTIVE RIGHTS
120 Wall Street, 14th Floor
New York, New York 10005
(917) 637-3687

HELENE T. KRASNOFF
PLANNED PARENTHOOD FED. OF
AMERICA
1110 Vermont Avenue N.W., Suite 300
Washington, D.C. 20005
(202) 978-4800

*Counsel for Plaintiffs*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>12-1052</u>          Caption: <u>Gretchen S. Stuart, MD, et al. v. Janice E. Huff, MD, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Gretchen S. Stuart, MD</u>
(name of party/amicus)

_____

who is <u>        Appellee        </u>, makes the following disclosure:
       (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                 ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
       If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
****************************

I certify that on   January 27, 2012   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ Bebe J. Anderson                                  01/27/2012
_____                        _____
       (signature)                                              (date)

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 12-1052        Caption: Gretchen Stuart et al. v. Janice Huff et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

James R. Dingfelder, M.D.
(name of party/amicus)


who is _____ Appellee _____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                 ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
*****************************

I certify that on _____ 1/25/12 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____                    ___1/25/12_____
     (signature)                                              (date)

- 2 -

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>12-1052</u>          Caption:  <u>Gretchen S. Stuart, MD, et al. v. Janice E. Huff, MD, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>David A. Grimes, MD</u>
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
          (appellant/appellee/amicus)

1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                     ☐ YES ☑ NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐ YES ☑ NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)     ☐ YES ☑ NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?     ☐ YES ☑ NO
        If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
**************************

I certify that on __January 27, 2012__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ Bebe J. Anderson
_____              _____
(signature)                                        01/27/2012
                                                   (date)

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. 12-1052          Caption:  Gretchen S. Stuart, MD, et al. v. Janice E. Huff, MD, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Amy Bryant, MD
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                          ☐ YES ☑ NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**************************

I certify that on   January 27, 2012   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ Bebe J. Anderson
_____
(signature)

01/27/2012
_____
(date)

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. 12-1052          Caption:  Gretchen Stuart et al. v. Janice Huff et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Serina Floyd, M.D.
(name of party/amicus)


who is _____Appellee_____, makes the following disclosure:
       (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                          ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ 1/25/12 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____
(signature)

1/25/12
_____
(date)

- 2 -

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>12-1052</u>          Caption: <u>Gretchen S. Stuart, MD, et al. v. Janice E. Huff, MD, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Decker & Watson, Inc. d/b/a Piedmont Carolina Medical Clinic</u>
(name of party/amicus)

_____

who is _____<u>Appellee</u>_____, makes the following disclosure:
          (appellant/appellee/amicus)

1.     Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐ YES ☑ NO
       If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:


# CERTIFICATE OF SERVICE
**************************

I certify that on ___January 27, 2012___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:


s/ Bebe J. Anderson                          01/27/2012
_____          _____
(signature)                                              (date)

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>12-1052</u>          Caption:  <u>Gretchen S. Stuart, M.D., et al., v. Janice E. Huff, M.D., et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Planned Parenthood of Central North Carolina</u>
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                 ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:


# CERTIFICATE OF SERVICE
**************************

I certify that on ___January 25, 2012___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:


| /s Katherine Lewis Parker | 1/25/2012 |
|---|---|
| (signature) | (date) |

- 2 -

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. 12-1052          Caption:  Gretchen S. Stuart, MD, et al. v. Janice E. Huff, MD, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

 A Woman's Choice of Raleigh, Inc.
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
       (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      ☐YES ☑NO
        If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
***************************

I certify that on __January 27, 2012__ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:


s/ Bebe J. Anderson                                      01/27/2012
_____                          _____
(signature)                                              (date)

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>12-1052</u>        Caption: <u>Gretchen S. Stuart, M.D., et al., v. Janice E. Huff, M.D., et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Planned Parenthood Health Systems, Inc.</u>
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
**************************
I certify that on ___January 25, 2012___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s Katherine Lewis Parker                                           1/25/2012
_____                              _____
(signature)                                                              (date)

- 2 -

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than
one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or
mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici
curiae are required to file disclosure statements.  Counsel has a continuing duty to update this
information.

No. 12-1052          Caption:  Gretchen Stuart et al. v. Janice Huff et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Takey Crist, M.D.
(name of party/amicus)


who is _____ Appellee _____, makes the following disclosure:
          (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                  ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:


## CERTIFICATE OF SERVICE
**************************

I certify that on _____ 1/25/12 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:


_____          _____
(signature)                                        1/25/12
                                                        (date)

- 2 -

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 12-1052        Caption: Gretchen Stuart et al. v. Janice Huff et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Takey Crist, M.D., P.A., d/b/a Crist Clinic for Women
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
***************************

I certify that on _____1/25/12_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____
(signature)

_1/25/12_____
(date)

- 2 -

11/17/2011
SCC

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF THE ISSUE ........................................................................2

STATEMENT OF THE FACTS ......................................................................2

    A.    The Woman's Right To Know Act .....................................................3

    B.    Plaintiffs' Complaint And Procedural History.................................5

    C.    Motion For Intervention And Opinion Below ...................................8

SUMMARY OF ARGUMENT .......................................................................12

STANDARD OF REVIEW ............................................................................18

ARGUMENT ..................................................................................................19

    I.    THE DISTRICT COURT DID NOT ABUSE ITS
            DISCRETION IN DENYING THE PROPOSED
            INTERVENORS' MOTION TO INTERVENE AS OF RIGHT ......19

            A.    Proposed Intervenors Possess Only A General Interest In
                 Seeing The Act Upheld As Constitutional, Not A
                 Concrete Protectable Interest Sufficient To Support
                 Intervention As Of Right .........................................................20

            B.    Even If The Proposed Intervenors Possess A Sufficiently
                 Concrete Interest In This Litigation, That Interest Is More
                 Than Adequately Represented By The Attorney General .......32

            C.    If The Court Concludes That The Proposed Intervenors
                 Have A Cognizable Interest Inadequately Represented
                 By The Attorney General, It Should Remand For
                 Consideration Of Whether The Motion For Intervention
                 Was Timely ..............................................................................45

    II.    THE DISTRICT COURT PROPERLY EXERCISED ITS
            DISCRETION IN DENYING PERMISSIVE
            INTERVENTION, AND THERE IS NO CAUSE TO
            DISTURB THAT DECISION .......................................................47

# TABLE OF CONTENTS
(continued)

**Page**

CONCLUSION ................................................................................51

STATEMENT RESPECTING ORAL ARGUMENT..........................................51

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) ........................................................... 34

*Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*,
772 F.2d 401 (8th Cir. 1985) ..................................................... 46, 47

*Black v. Cent. Motor Lines, Inc.*,
500 F.2d 407 (4th Cir. 1974) .......................................................... 45

*Bradley v. Milliken*,
828 F. 2d 1186 (6th Cir. 1987) ....................................................... 50

*Daggett v. Comm'n on Govt'l Ethics & Election Practices*,
172 F.3d 104 (1st Cir. 1999) .......................................................... 34

*Diamond v. Charles*,
476 U.S. 54 (1986) ...................................................... 22, 23, 48, 49

*Feller v. Brock*,
802 F.2d 722 (4th Cir. 1986) ...................................................... 39, 40

*Gould v. Alleco, Inc.*,
883 F.2d 281 (4th Cir. 1989) ...................................................... 18, 22

*Houston Gen. Ins. Co. v. Moore*,
193 F.3d 838 (4th Cir. 1999) .......................................................... 45

*In re Sierra Club*,
945 F.2d 776 (4th Cir. 1991) ................................................ 23, 25, 40, 41

*JLS, Inc. v. Public Service Comm'n of West Virginia*,
321 F. App'x 286 (4th Cir. 2009) ................................................. 42, 43

*Jones v. Prince George's Cty.*,
348 F.3d 1014 (D.C. Cir. 2003) ....................................................... 42

*Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*,
378 F.3d 774 (8th Cir. 2004) .......................................................... 38

# TABLE OF AUTHORITIES

*(continued)*

**Page(s)**

*MasterCard Int'l. Inc. v. Visa Int'l Serv. Ass'n, Inc.,*
471 F.3d 377 (2d Cir. 2006) ..............................................................47

*MM ex rel. DM v. School Dist. of Greenville Cty.,*
303 F.3d 523 (4th Cir. 2002) .............................................................21

*Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders'
Ass'n,*
646 F.2d 117 (4th Cir. 1981) .............................................................19

*Patterson v. Shumate,*
912 F.2d 463 (4th Cir. 1990) .............................................................21

*Perry v. Proposition 8 Official Proponents,*
587 F.3d 947 (9th Cir. 2009) .............................................................42

*Planned Parenthood v. Doyle,*
162 F.3d 465 (7th Cir. 1998) ........................................22, 27, 28, 32

*Roe v. Casey,*
464 F. Supp. 483 (E.D. Pa. 1978)......................................................50

*Smith v. Pennington,*
352 F.3d 884 (4th Cir. 2003) ......................................................19, 47

*Teague v. Bakker,*
931 F.2d 259 (4th Cir. 1991) ......................................................21, 22

*Texas Medical Providers Providing Abortion Services v. Lakey,*
667 F.3d 570 (5th Cir. 2012) ......................................................41, 42

*United Guaranty Residential Insurance Co. v. Philadelphia Savings Fund
Society,*
819 F.2d 473 (4th Cir. 1987) .............................................................39

*United States v. Hooker Chems. & Plastics Corp.,*
749 F.2d 968 (2d Cir. 1984) .............................................................34

*United States v. Ritchie Special Credit Invs.,*
620 F.3d 824 (8th Cir. 2010) .............................................................46

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Virginia v. Westinghouse Elec. Corp.*,
   542 F.2d 214 (4th Cir. 1976) ...................................................................19, 33

*Wade v. Goldschmidt*,
   673 F.2d 182 (7th Cir. 1982) ...............................................................34

**STATUTES**

2011 N.C. Sess. Laws 405 ...............................................................passim

10A N.C. Admin. Code 14E.0305 .......................................................3, 4

N.C. Gen. Stat. § 90-21.13 ...............................................................3

N.C. Gen. Stat. § 90-21.81 ...............................................................4

N.C. Gen. Stat. § 90-21.82 .............................................................passim

N.C. Gen. Stat. § 90-21.83 ...............................................................25

N.C. Gen. Stat. § 90-21.85 .............................................................passim

N.C. Gen. Stat. § 90-21.86 ...........................................................24, 25

N.C. Gen. Stat. § 90-21.87 ...............................................................25

N.C. Gen. Stat. § 90-21.88 .............................................................passim

N.C. Gen. Stat. § 90-21.90 .............................................................6, 7

N.C. Gen. Stat. § 114-2 ...................................................................35

**RULES**

Fed. R. Civ. P. 24 .........................................................................passim

**OTHER AUTHORITIES**

6 *Moore's Federal Practice* (3d ed. 2011) .............................................34

7C Charles Alan Wright et al., *Federal Practice and Procedure* (3d ed.
   2007) ...................................................................................passim

## PRELIMINARY STATEMENT

This suit challenges the constitutionality of certain parts of North Carolina's "Woman's Right to Know Act," which regulates the provision of abortions and imposes new, onerous requirements on physicians who perform abortions and women who choose to receive them. The regulation of abortion is obviously a hotly disputed issue of great interest to many people. Nine of those people—three physicians who do not provide abortions, four women who claim to have had abortions many years ago but do not claim they will ever consider doing so in the future, and two entities that seek to encourage pregnant women to continue their pregnancies rather than have abortions (collectively, the "proposed intervenors")—moved below to intervene in this suit. The district court correctly exercised its discretion in denying that motion.

There is no question that the proposed intervenors care passionately about the enforcement of the Act as written, and about the fate of this suit. But as this Court and every other court ever to consider the issue has explained, that sort of general, ideological interest in the enforcement of a challenged statute is not remotely sufficient to support intervention under Federal Rule of Civil Procedure 24. If it were, then anyone who cared enough could intervene to defend any challenged statute. That, of course, is not the law. Rather, a specific, concrete, non-speculative interest in the outcome of the litigation—and not a general or

1

ideological interest in the subject-matter of the suit—is required to support

intervention.  The proposed intervenors have put forth no such interest here.  And

even if the proposed intervenors were able to meet this threshold requirement—

which they are not—intervention would still be wholly improper.  As the district

court correctly explained, the North Carolina Attorney General, representing the

state officials with enforcement authority under the Act, is actively defending the

Act's constitutionality, and is thus fully and adequately representing the proposed

intervenors' interests.  Moreover, as the district court found, allowing intervention

would complicate the case with no corresponding benefit and cause undue delay.

There is thus no reason whatsoever to allow intervention here.

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion in denying defendant-

intervenor status, either as of right pursuant to Fed. R. Civ. P. 24(a)(2), or

permissively pursuant to Fed. R. Civ. P. 24(b)(1)(B), to third parties with general

and highly speculative "interests" in a state statute whose constitutionality is being

defended by the State's Attorney General.

## STATEMENT OF THE FACTS

The underlying issue in this case is the constitutionality of portions of North

Carolina's Woman's Right to Know Act, which imposes certain restrictions on the

provision of abortion services in North Carolina.  Plaintiffs—physicians and

medical centers that provide abortion services—have challenged several aspects of that Act as violative of the First and Fourteenth Amendments.  The Act's constitutionality is being defended by the North Carolina Attorney General, with discovery having recently commenced and scheduled to be completed by the end of August.  The proposed intervenors contend that the Attorney General's defense of the Act is inadequate, and that they should be allowed to intervene.  The district court, in the exercise of its discretion, denied leave to intervene, and the proposed intervenors now appeal.  The following facts are relevant to that appeal:

### A.    The Woman's Right To Know Act

On July 28, 2011, the North Carolina General Assembly enacted the Woman's Right to Know Act ("the Act"), 2011 N.C. Sess. Laws 405 (to be codified at N.C. Gen. Stat. §§ 90-21.80 – 90.21.92), which imposes new restrictions on the provision of abortions in the state.  For example, the Act significantly alters the "informed consent" requirements applicable to abortion procedures.  Under North Carolina law as it existed before the Act's enactment, physicians were required to obtain informed consent from each abortion patient. *See* N.C. Gen. Stat. § 90-21.13 (requiring informed consent for all medical procedures); 10A N.C. Admin. Code 14E.0305(a) (requiring inclusion of consent form in each abortion patient's medical record).  Moreover, each patient was required to have an ultrasound examination prior to receiving an abortion.  10A

3

N.C. Admin. Code 14E.0305(d). The Act dramatically alters the abortion-related

informed consent requirement by specifying the information that the patient's

medical providers must convey or make available to her, and requiring her to then

wait at least 24 hours before obtaining an abortion. *See* N.C. Gen. Stat. § 90-

21.82.

The Act, moreover, goes significantly farther than simply altering the

informed-consent regime for abortions. As explained, prior North Carolina law

required each patient to have an ultrasound examination prior to receiving an

abortion. 10A N.C. Admin. Code 14E.0305(d). The Act, however, requires the

patient to undergo the "the display of real-time view of the unborn child" through

"an ultrasound or any more scientifically advanced means." N.C. Gen. Stat. §§ 90-

21.81(4), 90-21.85. Further, either the physician "who is to perform the abortion

or [a] qualified technician working in conjunction with the physician" must do

each of the following at least four hours before "any part of an abortion is

performed": (1) perform "an obstetric real-time view of the unborn child on the

pregnant woman" and display "the images so that [she] may view them"; (2)

provide "a simultaneous explanation of what the display is depicting," which must

include "the presence, location, and dimensions" of the embryo or fetus; (3)

provide a "medical description of the images, which shall include the dimensions

of the embryo or fetus and the presence of external members and internal organs, if

4

present and viewable"; and (4) offer the woman "the opportunity to hear the fetal heart tone." *Id*. § 90-21.85(a). The Act states that "[n]othing in [§ 90-21.85] shall be construed to prevent a pregnant woman from averting her eyes from the displayed images or from refusing to hear the simultaneous explanation and medical description." *Id*. § 90-21.85(b). This "display of real-time view requirement" is the principal subject of challenge in this litigation.

The Act also introduces civil and injunctive remedies against abortion providers for willful or reckless violations of the Act. Section 90-21.88(a) creates a civil action against abortion providers, which may be brought either by a woman who had an abortion or by the "father of an unborn child that was subject to abortion." Section 90-21.88(b) provides for injunctive relief to prevent providers who have willfully violated the Act from providing future abortions, and authorizes suit to seek such relief by three classes of persons: (i) the woman upon whom an abortion was performed or attempted, (ii) the spouse, parent, sibling, guardian, current or former licensed health care provider of the woman upon whom an abortion was performed or attempted, or (iii) the Attorney General. Absent plaintiffs' challenge, the entire Act would have become "effective 90 days after it becomes law"—i.e., October 26, 2012. 2011 N.C. Sess. Laws 405, § 3.

## B. Plaintiffs' Complaint And Procedural History

On September 29, 2011, plaintiffs filed a complaint (J.A. 20-49) challenging

5

the constitutionality of certain provisions of the Act, naming as defendants the

North Carolina Attorney General and several other individuals in their official

capacities (collectively, the "Attorney General"). In particular, plaintiffs

challenged the Act's "display and real-time view requirement" on both First and

Fourteenth Amendment grounds, arguing (among other things) that this provision

violates physicians' free speech rights by forcing them to disseminate the state's

message against their will, and that the provision violates women's substantive due

process rights. J.A. 45-47; *see also* Second Amended Complaint, ECF No. 75.

Plaintiffs also challenged certain portions of the new "informed consent"

requirements as unconstitutionally vague, and asserted various challenges to one

particular portion of the informed-consent provision requiring that state materials

be read to certain women. *Id.* Plaintiffs have not challenged the Act's required

provision of information about medical risks associated with abortion[1] or the

provisions of the Act establishing a civil action or authorizing injunctive relief.

    Concurrent with their complaint, plaintiffs filed a motion for a temporary

restraining order and preliminary injunction based on their First Amendment and

substantive due process challenges to the "display of real-time view requirement"

(§ 90-21.85), and their vagueness challenge as to §§ 90-21.82, 90-21.85, and 90-

---

[1] Plaintiffs' vagueness challenges to § 90-21.82 are based on the lack of clarity as to which professionals can satisfy all of its requirements. J.A. 30, 41.

6

21.90.  Motion for Temporary Restraining Order and Preliminary Injunction, ECF

No. 8.  The Attorney General filed an opposition to the plaintiffs' motion on

October 12, 2011.  Defendants' Brief in Opposition to Motion for Temporary

Restraining Order and Preliminary Injunction, ECF No. 29.  On October 17, the

district court held a hearing on plaintiffs' motion lasting nearly three hours (J.A.

140-243), during which the Attorney General asserted numerous arguments for

upholding the Act, including the State's interests in protecting abortion patients

from psychological and emotional distress, preventing women from being coerced

into having abortions, and promoting fetal life and discouraging abortion.  J.A.

182, 193, 195, 211.

On October 25, the district court preliminarily enjoined § 90-21.85—the

"display and real-time view requirement"—on First Amendment grounds.  J.A.

244-262, 263.[2]  The remainder of the Act, including the new informed-consent

provisions and the civil-action and injunctive-relief provisions, became effective

on October 26.  The Court also issued a scheduling order calendaring a hearing and

conference for December 5 (J.A. 265-267), which was attended by counsel for both

---

[2] In response to motions to modify and clarify the preliminary injunction
order, the district court later issued an Amended Memorandum and Order,
clarifying one paragraph of the original preliminary injunction order as to its
interpretation of one aspect of the new informed-consent requirements, but leaving
in place the preliminary injunction as to the "display and real-time view
requirement."  J.A. 584-603.

plaintiffs and the Attorney General.

The Attorney General answered and moved to dismiss the complaint on November 9, and amended his answer on November 29. Motion to Dismiss and Answer of the Defendants to the Plaintiffs' Complaint, ECF No. 50; Answer of the Defendants to the Plaintiffs' Complaint, ECF No. 56. Plaintiffs filed an amended complaint on December 1 (J.A. 484-519), which the Attorney General answered on December 14 (J.A. 533-569), and a second amended complaint on March 8, 2012 (Second Amended Complaint for Injunctive and Declaratory Relief, ECF No. 75), which the Attorney General answered on March 28 (Answer of Defendants to Plaintiffs' Second Amended Complaint, ECF No. 84). On February 22, plaintiffs and the Attorney General agreed on a timeline for discovery in a Joint Rule 26(f) Report (J.A. 612-616), which the magistrate judge approved on February 27 (J.A. 617).[3] Plaintiffs and the Attorney General produced initial disclosures on March 23. Discovery is scheduled to be completed by August 27, 2012. J.A. 613.

### C.      Motion For Intervention And Opinion Below

On November 8, 2011, the nine proposed intervenors—three Medical Professionals (two obstetrician/gynecologists and one neonatologist, none of whom

---

[3] Under The Joint Rule 26(f) Report, plaintiffs' expert disclosures are due April 16; Defendants' expert disclosures are due May 16; plaintiffs' rebuttal expert disclosures are due June 15; depositions will be completed by August 15; and discovery is set to end August 27. J.A. 612-616.

asserted that he performed or intends to perform abortions), four self-styled "Post-Abortive Women" (each of whom asserted that she had an abortion—one in 1993, one in 1995, one in 1999, and one in 2003), and two "Pregnancy Medical Centers" (or "Crisis Pregnancy Centers")—filed a motion to intervene, pursuant to Federal Rule of Civil Procedure 24. In support of their asserted right to intervene, the proposed intervenors argued that they are "among the class of beneficiaries the North Carolina Legislature intended to benefit or protect by enacting the Act." J.A. 276. In particular, they contended that the Medical Professionals and Crisis Pregnancy Centers "are committed to providing safe and responsible care to all their patients or clients, including the provision of the voluntary and informed consent they are authorized to certify under § 90-21.82 and § 90-21.88." *Id.* And the "Post-Abortive Women," they argued, "are the essence of the Act." *Id.* Further, the Medical Professionals and Crisis Pregnancy Centers additionally maintained that they have "an additional direct and substantial interest" in this litigation because "they enjoy separate legal rights and civil remedies under the Act pursuant to § 90-21.88(b)[,] which allows the Medical Professionals, [the Crisis Pregnancy Centers], and the Attorney General to seek injunctive relief." J.A. 277. And the "Post-Abortive Women" argued that they possess a direct interest in the litigation because "they are all women whose abortions were coerced and/or uninformed … by some of the plaintiffs or by other abortionists," and

9

additionally because "they may seek the civil remedies under § 90-21.88 of the Act." *Id.* The Post-Abortive Women argued that only they, and none of the defendants, can avail themselves of the civil remedy set forth in § 90-21.88(a). *Id.* Finally, the proposed intervenors argued that the Attorney General had not adequately presented evidence in opposition to plaintiffs' motion for a preliminary injunction, and that their interests diverge from and are not adequately protected by the Attorney General. *Id.* at 278-279. Neither the Medical Professionals nor the Crisis Pregnancy Centers assert that they perform or intend to perform abortions, and none of the Post-Abortive Women suggest that they would contemplate an abortion in the future. Plaintiffs opposed the motion.

On December 22, the district court denied the motion. The court explained that in order to intervene as of right pursuant to Rule 24(a)(2), parties seeking intervention must demonstrate that they have satisfied three preconditions: that (i) the proposed intervenors have "a significant protectable interest" in the subject matter of the litigation; (ii) "the protection of their interests would be impaired because of the litigation"; and (iii) "their interests are not being adequately represented by the existing Defendants." J.A. 605 (quotation omitted). The district court explained that "[i]t is questionable that each of the three groups … have 'an interest in the subject matter of the litigation' as that term has been defined." *Id.* But the court did not reach that question, because "the proposed

10

intervenors clearly have not met the third element of the test: they have not shown that their interests are not being properly represented by the current Defendants." J.A. 606. The court explained that a "'very strong showing of inadequacy' is needed when the existing Defendant is a 'government agency,'" *id.* (quoting 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1909 (3d ed. 2007) (hereinafter, "Wright & Miller")), because "'[a]cting in a type of representative capacity is a basic government function, and the business of the government could hardly be conducted if, in matters of litigation, individual citizens could usually or always intervene and assert individual points of view,'" *id.* (quoting 6 Moore's Federal Practice § 24.03[4][a][iv][A] (3d ed. 2011)).

Here, the district court explained, the North Carolina Department of Justice represents all the defendants, and that agency has "precisely the same goal" as the proposed intervenors: "to uphold the Act as constitutionally permissible." *Id.* And the proposed intervenors have not rebutted the presumption that the government adequately represents them, because they "have not alleged diversity of interest, collusion, or nonfeasance." J.A. 607. In particular, while the proposed intervenors argued that the Attorney General's "decision not to present evidence at a preliminary injunction hearing demonstrates that their interests are not being adequately represented," the court explained that in the short time between the filing of the complaint and the preliminary injunction hearing, "the Attorney

11

General's office prepared and filed a detailed, thorough, and substantial brief addressing the legal questions presented by the Plaintiffs' claim for injunctive relief," and at that hearing, "counsel for the Defendants argued zealously in opposition to the motion for injunctive relief on substantive grounds." *Id.* "While the proposed intervenors may have disagreed with the Defendants' tactical decisions, such a disagreement does not rebut the presumption of adequacy." *Id.* Thus, because the Attorney General is "adequately and thoroughly representing the same interests the proposed intervenors have," the court "den[ied] the proposed intervenors' motion to intervene as a matter of right." *Id.*

Finally, the court denied the motion for permissive intervention under Rule 24(b), explaining that "[a]dding three groups of intervenors would necessarily complicate the discovery process and consume additional resources of the court and the parties." J.A. 608. While adding intervenors does not always constitute undue delay, it would here because the Attorney General's "zealous[] pursui[t] of the same ultimate objectives as the movants" results in a lack of any appreciable "benefit to existing litigants, the courts, or the process." *Id.*

This appeal followed.

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion in denying the proposed intervenors' motion to intervene, and its decision should be affirmed.

I.  To intervene as of right, a would-be intervenor must demonstrate a concrete, legally protectable interest in the underlying litigation that may be impaired by disposition of the action, and show that its interest or interests are not adequately represented by the existing parties.  The proposed intervenors have made neither of those showings here.

A.  The proposed intervenors have failed to demonstrate a cognizable, non-speculative interest in the litigation as required by Rule 24(a).  To the precise contrary, the proposed intervenors have asserted generalized, ideological interests of the sort courts routinely reject as insufficient to support intervention, including in abortion cases like this one.

The proposed intervenors first contend that they have an interest in this litigation because they are the "beneficiaries" of the Act.  Not so.  The Act intends to benefit women who may contemplate having an abortion, and regulates abortion providers.  None of the proposed intervenors falls within either of those categories—the Post-Abortive Women do not claim that they would contemplate having an abortion in the future, and neither the Medical Professionals nor the Crisis Pregnancy Centers claims that they will perform abortions in the future.  Their asserted deeply-felt belief in the principles underlying the Act and the need for its enforcement is precisely the type of generalized, ideological interest that cannot suffice to support intervention as of right.  And while the Medical

13

Professionals and the Crisis Pregnancy Centers assert an interest in having the Act enforced so that *they* can perform the ultrasound and other requirements detailed in the Act, that interest is not implicated by this lawsuit. If plaintiffs' challenge is successful, abortion providers will not be required to take certain actions mandated by the Act, but the Medical Professionals and Crisis Pregnancy Centers would not be *prevented* from treating patients in any way they see fit.

The proposed intervenors also argue that they have an interest in assuring that women contemplating having an abortion have "the information they need to develop fully informed consent," which they assert includes "first see[ing] an ultrasound as is required by the challenged Act." Br. 16. But that is simply a restatement of the very policy animating the Act's passage—shared by everyone who wants to Act upheld and enforced—and precisely the type of general, ideological interest that has never been sufficient for intervention.

Finally, the proposed intervenors contend that they have an interest in preserving the civil remedies established in the Act. That contention is wholly meritless, since plaintiffs' lawsuit *does not challenge those civil remedies*. In any event, this interest would be far too speculative to qualify under Rule 24(a). The proposed intervenors' brief relies almost exclusively on the Post-Abortive Women's purported interest in preserving the damages remedy in § 90-21.88(a), which allows women who have had abortions after the Act's effective date to sue

14

an abortion provider for knowing or reckless violations of the Act. But that remedy is entirely inapplicable to the Post-Abortive Women, who had abortions far before the Act became effective, are adamantly opposed to abortion, and have never suggested they would contemplate an abortion in the future. No other group of intervenors has shown a non-speculative interest in the Act's civil remedies provision.

B. Even if the proposed intervenors have interests sufficiently concrete to qualify under Rule 24(a), the district court did not abuse its discretion in concluding that those interests are fully and adequately represented by the Attorney General. When (as here) a government agency seeks the same end as a would-be intervenor, there is a presumption that the government agency adequately represents the would-be intervenor. The proposed intervenors fight the existence of that well-established presumption, but they do not dispute that in order to show that the Attorney General's representation is inadequate, they must demonstrate his adversity of interest, collusion, or nonfeasance. Whatever the strength of the presumption of adequacy, the proposed intervenors have failed to make the requisite showing.

The proposed intervenors acknowledge that they share many of their interests with the Attorney General, but contend that they possess two interests that the Attorney General does not. The first of these—"[e]nsuring that a pregnant

15

woman understands the potential risks and harms to the child so she can make the decision *for the child*"—is merely a restatement of the purpose of the Act, which is to provide women contemplating abortions with the information the State (like the proposed intervenors) believes is necessary for the woman to make an informed decision. Br. 21 (emphasis added). The second—"preserving the 'civil remedies' granted in § 90-21.88," Br. 21—could only conceivably relate to bringing a claim for injunctive relief under § 90-21.88(b). Yet that provision expressly allows the Attorney General to bring precisely the same type of suit. Thus, the Attorney General's interest in upholding the validity of this remedy is at least as strong as the proposed intervenors'. Finally, the proposed intervenors argue that the Attorney General's decision not to immediately appeal the district court's grant of a preliminary injunction demonstrates an adversity of interest because they claim an interest in having the rights and protections granted them by the Act in force immediately. But the Act grants the proposed intervenors neither rights nor protections. And in any event, courts have long and routinely held that disagreements over litigation tactics—including in particular the decision whether to appeal—are not grounds for intervention.

The proposed intervenors attempt to show the Attorney General's nonfeasance by highlighting his decision not to appeal the district court's preliminary injunction decision, his decision to focus on legal rather than factual

arguments during the preliminary injunction briefing, and his decision not to attempt to vacate the preliminary injunction based on a recent Fifth Circuit opinion that the proposed intervenors believe to be favorable to the Attorney General's position. But again, a disagreement over litigation tactics does not demonstrate nonfeasance, and it cannot support intervention. Further, and in any event, the district court correctly explained that the Attorney General has been effectively and vigorously litigating this case from the outset. It is perfectly reasonable for the Attorney General to conclude that the best approach to litigating this case is to obtain final judgment from the district court rather than to spend time litigating preliminary issues before the district court and this Court. To that end, the Attorney General is currently participating in discovery, and has noticed his intention to present a robust factual record in support of his position. The proposed intervenors' attempt to demonstrate the Attorney General's nonfeasance is wholly meritless.

C. Finally, if this Court concludes that the proposed intervenors possess a cognizable legal interest that is inadequately represented by the Attorney General, it should remand for the district court to consider whether their intervention motion was timely. The question of timeliness is a fact-dependent inquiry reserved to the discretion of the district court, and there is good reason to find the proposed intervenors' motion untimely in the circumstances of this case.

17

II.  The district court did not abuse its discretion in denying permissive intervention under Rule 24(b).  That decision is entrusted wholly to the district court, and the proposed intervenors do not present a single argument that would support overriding the district court's discretion here.  Rule 24(b) requires that the would-be intervenor have a "claim or defense" that has "a question of law or fact in common" with "the main action."  The proposed intervenors have not met that threshold requirement under the governing standard.  In any event, the district court was well within its discretion in finding that allowing intervention here would lead to undue complication and delay without any corresponding benefit to the parties or the Court.  It is in everyone's interest that the constitutionality of the Act be adjudicated sooner rather than later.  Particularly given the proposed intervenors' lack of any concrete interest in this litigation and the Attorney General's continues vigorous defense of the Act, the district court's decision to avoid delay in the final resolution of that question was plainly not an abuse of discretion.

**STANDARD OF REVIEW**

The district court's decision, as to both intervention of right (Rule 24(a)) and permissive intervention (Rule 24(b)), is reviewed for abuse of discretion.  *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989).  "The district court is entitled to the full range of reasonable discretion in determining whether the[] requirements … of

18

Rule 24(a)(2) … have been met." *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). "If there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b), and even though … the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." 7C Wright & Miller § 1913; *see Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003).

## ARGUMENT

## I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE PROPOSED INTERVENORS' MOTION TO INTERVENE AS OF RIGHT

"To intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), the moving party must show that (1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir. 1981). Failure to meet any one of these criteria must result in denial of the motion to intervene. The proposed intervenors fail to meet any of them.

The district court found it "questionable" (J.A. 605) whether the proposed intervenors' asserted interest in the litigation suffices to support intervention as of right, but in the end the court did not finally decide that question. Rather, the court

19

correctly found that even if their interest in this litigation could support intervention, the proposed intervenors failed to satisfy their heavy burden of demonstrating that the Attorney General—who has been and continues to be vigorously litigating this case—does not adequately represent that interest here. The district court's judgment should be affirmed both because the proposed intervenors have not demonstrated anything beyond a generalized, speculative interest in upholding the constitutionality of the Act, which this Court and others have held does not suffice to support intervention as of right, and because the Attorney General more than adequately represents their interests. Because the former ground is logically antecedent to the latter, we begin there.

### A.    The Proposed Intervenors Possess Only A General Interest In Seeing The Act Upheld As Constitutional, Not A Concrete Protectable Interest Sufficient To Support Intervention As Of Right

The district court found that "[i]t is questionable that each of the three groups" possess an interest in this litigation sufficiently concrete to support intervention, but in the end found it unnecessary to reach that question. J.A. 605-06.[4] The record demonstrates that the district court's doubts are well founded.

---

[4] The proposed intervenors misleadingly state that "the District Court conceded that [they] have tangible interests created by the Act." Br. 12. In fact, the court explained that "[c]ertainly all three groups are interested in the subject matter of the litigation, but that is not the same thing" as a concrete interest sufficient to support intervention. J.A. 605.

The proposed intervenors assert three supposed interests supporting intervention: (i) they and those similarly situated are the intended beneficiaries of the Act; (ii) they have an interest in ensuring that women considering abortion have the information they need to develop informed consent; and (iii) they have an interest in maintaining the civil remedies set forth in the Act.  Br. 13-18.  Those asserted interests are either purely generalized interests, shared with many North Carolinians, to see the Act upheld in full; wholly speculative interests insufficient to support intervention as of right; or interests wholly irrelevant to this litigation. None of these asserted interests is remotely sufficient to support the proposed intervenors' asserted right to participate in this lawsuit.[5]

1.    *An intervenor as of right requires a concrete, "significantly protectable interest" in the litigation, not a general or speculative interest in the litigation's subject matter*

To intervene as of right, a proposed intervenor must have a "cognizable," *Patterson v. Shumate*, 912 F.2d 463, 463 (4th Cir. 1990), and "significantly protectable interest" in the litigation, *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991).  A proposed intervenor has a "significantly protectable interest" in the litigation when he stands "to gain or lose by the *direct* legal operation of the

---

[5] This Court may affirm the district court's judgment on a ground not relied on by the district court below so long as "such grounds are apparent from the record."  *MM ex rel. DM v. School Dist. of Greenville Cty.*, 303 F.3d 523, 536 (4th Cir. 2002).

district court's judgment." *Id.* (emphasis added).

A generalized interest in the enforcement of a statute does not satisfy this standard. Thus, in a case nearly identical to this one, the Seventh Circuit explained that two husbands of pregnant women lacked a protectable interest sufficient to support intervention to defend a "partial-birth abortion" ban: "As these men are passionately opposed to abortion of any kind and do not suggest that their wives disagree with them about the issue and so might consider undergoing a [banned abortion procedure], they have no significant interest in this litigation other than an ideological one." *Planned Parenthood v. Doyle*, 162 F.3d, 465 (7th Cir. 1998). "If these men have standing to oppose a challenge to the partial abortion law," the court explained, "then any potential beneficiary of a statute could intervene in any suit challenging the statute's scope or validity, something no one believes." *Id.* As Justice O'Connor has explained, a proposed intervenor's "desire that [an] Abortion Law as written be obeyed" is not a judicially cognizable interest supporting intervention. *Diamond v. Charles*, 476 U.S. 54, 66 (1986) (O'Connor, J., concurring); *cf. Gould v. Alleco, Inc.*, 883 F.2d 281, 285 (4th Cir. 1989) (holding that shareholders' general interest in the maintenance of a corporation's assets is not enough to support intervention—"[i]n a sense, every company's stockholders, bondholders, directors and employees have a stake in the outcome of any litigation involving the company, but this alone is insufficient to imbue them

with the degree of 'interest' required for Rule 24(a) intervention").

Nor is the "cognizable" and "significantly protectable" injury standard satisfied by the assertion of a mere "speculative future interest." *In re Sierra Club*, 945 F.2d 776, 779 n.8 (4th Cir. 1991). Indeed, this Court has explicitly used "anti-abortion groups who seek to intervene in suits challenging the constitutionality of statutes regulating abortion" as exemplars of those *not* entitled to intervene, because they would seek "to intervene merely as a lobbyist or because of a *speculative future interest*." *Id.* (emphasis added).

That analysis applies directly here. Although they attempt to reframe their interest, they cannot escape the fact that their principal interest is a "desire that [an] Abortion Law as written be obeyed." *Diamond*, 476 U.S. at 66 (O'Connor, J. concurring). Indeed, rather than presenting any "cognizable" or "significantly protectable" interest, the proposed intervenors collectively assert only a general, ideological interest in upholding the Act, purely speculative interests insufficient to support intervention, or interests wholly inapposite to this litigation.

2.      *None of the supposed interests the proposed intervenors advance support intervention here*

The proposed intervenors press three separate interests that they believe support intervention as of right. None does.

a. The proposed intervenors first contend that they have a concrete interest in this litigation because they are the "class of beneficiaries the North Carolina

Legislature intended to benefit or protect with the Act." Br. 13. Not so. The Act is specifically designed to protect women who may contemplate having abortions (and, by extension, their "unborn children"). After all, it is entitled the "Woman's Right to Know Act," and its purpose (as stated in its preamble) is to "require a twenty-four-hour waiting period and the informed consent of a pregnant woman before an abortion may be performed." 2011 N.C. Sess. Laws 405. And the only substantive provisions of the Act place requirements and prerequisites on the performance of abortions—i.e., on physicians who perform abortions—for what the Legislature believed was the benefit of women who are considering that option. *E.g.*, N.C. Gen. Stat. § 90-21.82 (requiring a woman's "voluntary and informed consent" before an abortion is performed, setting forth detailed information that must be provided before consent can be deemed "voluntary and informed," allowing the woman the option of withdrawing her consent at any time, and assuring that the required information is provided in English and in any other language spoken by 2% or more of North Carolinians); *id*. §§ 90-21.83 & 90-21.84 (requiring the publication and dissemination of information about alternatives to abortion and about the anatomical and other characteristics of "the unborn child" at various stages of development); *id*. § 90-21.85 (requiring compliance with the "display and real-time view requirement," "in order for the woman to make an informed decision"); *id*. § 90-21.86 (requiring that a woman be informed in a

24

particular manner before an abortion needs to be performed due to medical emergency); *id.* § 90-21.87 (requiring additional steps to obtain informed consent for a minor).

The proposed intervenors' contentions do nothing to undermine that obvious fact. They argue that "the Post-Abortive Women, as mothers, parents, and former abortion patients, are the intended beneficiaries of the Act," and thus "have a direct and substantial interest in the subject matter of the litigation." Br. 13. But the Act is not directed at mothers, parents, or former abortion patients who do not claim they will ever again consider abortion. It is directed at *future* abortion patients, a category into which the Post-Abortive Women obviously do not fall.[6] Thus, they have no greater interest in the enforcement of the Act than any other of the Act's supporters.

The Medical Professionals' argument fares no better. They say that "as licensed health care providers," they are "charged with providing the best care possible for their patients," including ensuring "that the women they care for are fully informed when making a decision on whether to have an abortion." Br. 13.

─────────────────

[6] Indeed, given their anti-abortion sentiments, it would be difficult to imagine a group of women less likely to seek abortions—and thereby to "benefit" from the Act—than the Post-Abortive Women. In any event, any interest these women could possibly assert as to the possibility of benefitting from the Act on some future occasion is a wholly "speculative future interest." *In re Sierra Club*, 945 F.2d at 779 n.8.

Yet the Medical Professionals do not assert that they will, or even might, perform abortions in the future, and the Act only places requirements on physicians as preconditions to performing abortions. *E.g.*, N.C. Gen. Stat. §§ 90-21.82, 90-21.85. In any event, nothing in plaintiffs' challenge to the Act would prevent the Medical Professionals from keeping the "women they care for … fully informed" with any information they like. Plaintiffs merely seek the invalidation of some (but not all) of the Act's *requirements* on abortion providers' treatment of their patients; their challenge could not *prevent* any physician from treating his patients as he deems fit.

Finally, the Crisis Pregnancy Centers' argument is also meritless, for similar reasons. The Crisis Pregnancy Centers assert that they "possess a direct and substantial interest in the action as they provide the enjoined services"—i.e., ultrasounds—"to the women of North Carolina." Br. 13. Not so. The ultrasounds required by the Act must be performed by "the physician who is to perform the abortion, or qualified technician working in conjunction with the physician." N.C. Gen. Stat. § 90-21.85(a). The Crisis Pregnancy Centers do not perform abortions. While it is true that the Act deems the "display of real-time view requirement" satisfied if, within 72 hours of the abortion, the required ultrasound and associated compelled speech is performed by another "physician or qualified technician," *id.*, the Crisis Pregnancy Centers can only speculate that women considering obtaining

26

an abortion within the next 72 hours would go to them for that service, rather than seek that service where they can obtain the abortion. Even if some women were to seek ultrasounds from someone other than their abortion provider, there is no evidence to suggest that they would visit one of these two Crisis Pregnancy Centers as opposed to their own doctor or another facility in North Carolina. If such an interest were sufficient to intervene in this litigation, every doctor, clinic, and organization that provides ultrasounds would have a cognizable legal interest in this lawsuit. Finally, and most important, whether or not these Crisis Pregnancy Centers can perform ultrasounds is not impacted by the outcome of this litigation. They will remain able to perform ultrasounds, including doing so in the way the Act prescribes, whether plaintiffs win or lose in this case.

Thus, the primary interest asserted by the proposed intervenors is not "cognizable" or "significantly protectable" in this litigation. Rather, it is simply a general (or, at best, speculative) interest in the validity and enforcement of the Act, and is insufficient to support intervention. *See Doyle*, 162 F.3d at 465 ("As these men are passionately opposed to abortion of any kind and do not suggest that their wives disagree with them about the issue and so might consider undergoing a [banned abortion procedure], they have no significant interest in this litigation other than an ideological one.").

b.  The proposed intervenors next assert an interest in ensuring "that women

27

considering an abortion in North Carolina have the information they need to develop fully informed consent." Br. 16. And they "strongly attest and believe that, in order for a woman to truly have informed consent before receiving an abortion, she must first see an ultrasound as is required by the challenged Act." *Id.* But that is simply a restatement of the principal policy animating the Act. Every North Carolina legislator who voted for the Act, and every North Carolina citizen who supports it, has precisely the same interest as the proposed intervenors in seeing the Act upheld and enforced as written. The proposed intervenors do not state a concrete interest in this litigation—only a general, ideological interest in seeing the Act upheld. *Doyle*, 162 F.3d at 465.

None of the arguments of the individual groups of proposed intervenors reveals any more convincing legal interest. The Post-Abortive Women simply say that they "have experienced, first hand, the devastating effects of the *un*informed consent the Act was designed to remedy." Br. 17 (emphasis in original). Their support for the Act is no doubt deeply felt, but they do not explain how this litigation specially affects them in any cognizable way, especially since they do not say that they would consider an abortion in the future. *See Doyle*, 162 F.3d at 465. The Medical Professionals merely repeat their "belie[f] that the performance of such ultrasounds is fundamental to protecting women from the negative" effects of having an abortion "without her fully informed consent." Br. 17. Again, that is

28

simply a reiteration of the policy behind the Act, and cannot possibly support intervention as of right.  If it did, then any active supporter of a statute could intervene to defend it.

Finally, the Crisis Pregnancy Centers say that they "also share such beliefs," and that they "have developed policies and procedures, and acquired equipment, to provide the informed consent services and the certifications of such provisions required by the Act."  Br. 17.  But, in fact, both acquired ultrasound equipment years ago, not because of the Act.  J.A. 446, 461.  Moreover, as explained earlier, the Act's regulations requiring the ultrasounds which the Crisis Pregnancy Centers claim they are going to provide are directed principally to "the physician who is to perform the abortion, or qualified technician working in conjunction with the physician," N.C. Gen. Stat. § 90-21.85(a), and the Crisis Pregnancy Centers can only speculate that, as a result of the Act, women *seeking abortions* will turn to them for the mandated ultrasound within 72 hours of their abortion.  And in any event, if pregnant women *do* turn to them, nothing will stop them from performing ultrasounds or doing anything else they deem appropriate, whether or not plaintiffs' challenge succeeds.  The proposed intervenors simply have no specific, cognizable interest in this litigation—only a general, ideological one insufficient to support intervention.

c.  Finally, the proposed intervenors assert that the Post Abortive Women

29

have an interest in preserving the civil damages action established by § 90-21.88(a).  Br. 15-16.  That provision establishes an action against a physician who performed an abortion "in knowing or reckless violation" of the Act, which may be brought either by a woman who had an abortion or by the "father of an unborn child that was subject to abortion."  N.C. Gen. Stat. § 99-21.88(a).  The interest in maintaining this provision cannot support intervention as of right, for at least two reasons.

First, and most obviously, *plaintiffs do not challenge the civil remedies provision*.  The civil remedies provision is currently in force, and will remain in force even if plaintiffs' challenge to the Act is fully successful, as will the substantive portions of the Act—like the provisions requiring physicians to provide women with the medical risks associated with abortion—that plaintiffs do not challenge.  A successful challenge would, of course, invalidate some substantive portions of the Act—most notably, the "display and real-time view requirement"— but the proposed intervenors have no right to intervene in defense of those provisions, for the reasons explained above.

Second, the civil damages remedy in the Act cannot possibly benefit the Post-Abortive Women.  Only women on whom an abortion was or will be performed after October 26, 2011, when the Act became effective, may bring a claim under the Act.  2011 N.C. Sess. Laws 405, § 3.  None of the Post-Abortive

30

Women assert that they will consider having an abortion in the future—their abortions all long predate the Act. The Act's civil damages remedy thus does not apply to them. At the very least, any suggestion that the Post-Abortive Women may contemplate an abortion in the future, and thus be able to bring suit under the Act, is highly speculative, and certainly insufficient to support intervention.[7]

There is no question that the proposed intervenors care deeply about the policies underlying the Act, and about its fate in the face of a constitutional challenge. But that places them in the same position as any concerned citizen. It

---

[7] The argument section of the proposed intervenors' brief relies only on the Post-Abortive Women's purported interest in upholding the Act's civil damages remedy. Br. 15-16. Earlier in the brief, in describing their declarations before the district court, the proposed intervenors note that the Medical Professionals (but not the Crisis Pregnancy Centers) had stated an interest in "[m]aintaining the 'civil remedies' granted to them in § 90-21.88(b)." Br. 8. That provision creates an action for injunctive relief against physicians who have willfully violated the Act from providing future abortions, which may be brought by a woman who had an abortion, the spouse, parent, sibling, guardian, or current or former licensed health care provider of such a woman, or the Attorney General. N.C. Gen. Stat. § 99-21.88(b). Having failed to argue the point on appeal, the Medical Professionals' argument is waived. In any case, the argument fails for the same reasons as the Post-Abortive Women's. Plaintiffs do not challenge the injunctive-relief provision. And it is purely speculative to assume that any of these three Medical Professionals will have a patient who previously had an abortion during which the abortion provider willfully violated the Act, and that the Medical Professional will then learn that the Act was willfully violated. Finally, even if the Medical Professionals' interest in upholding the injunctive relief provision qualified as sufficiently concrete to support intervention, that interest is fully shared by the Attorney General, who also has authority to bring a claim for injunctive relief under § 99-21.88(b).

31

does not put them in the position of an intervenor as of right. "If these [proposed intervenors] have standing to oppose a challenge to the … abortion law, then any potential beneficiary of a statute could intervene in any suit challenging the statute's scope or validity, something no one believes." *Doyle*, 162 F.3d at 465. (refusing to allow two men "passionately opposed to abortion" whose wives were pregnant but had no intentions of having abortions to intervene in case challenging abortion restrictions). That is enough to affirm the judgment below.

### B. Even If The Proposed Intervenors Possess A Sufficiently Concrete Interest In This Litigation, That Interest Is More Than Adequately Represented By The Attorney General

Even assuming, *arguendo*, that the proposed intervenors have stated a sufficiently concrete, non-speculative interest in this litigation to satisfy the first precondition of Rule 24(a), the judgment below must still be affirmed, because as the district court correctly found, the proposed intervenors have not demonstrated that the Attorney General does not adequately represent their interests. The proposed intervenors face a heavy burden in making such a demonstration, because they share precisely the same goal as the Attorney General—defeating the constitutional challenge to the Act. And a government agency—and particularly the principal law enforcement officer of the State—is presumed to adequately represent the proposed intervenors in those circumstances. The proposed intervenors do not come close to overcoming that burden. Their only argument is

32

that the Attorney General did not introduce evidence they would have introduced at the time they would have introduced it, and did not appeal at the time they would have appealed. But it is well established that disagreements over litigation tactics such as these do not show that a party—and especially a government agency—does not adequately represent a proposed intervenor. In fact, as the district court (which is in the best position to know) has found, the Attorney General has been vigorously defending the Act, and continues to do so. The district court certainly did not abuse its discretion in reaching that conclusion, and there is no basis whatsoever to reverse that decision.

1.    _The Attorney General is presumed to adequately represent the proposed intervenors, because their ultimate objectives are precisely the same_

The proposed intervenors do not deny that their ultimate objective is the same as the Attorney General's—assuring that the Act is upheld against plaintiffs' constitutional challenge. And as a general matter, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *Virginia*, 542 F.2d at 216. In order to overcome this presumption, a proposed intervenor must "demonstrate adversity of interest, collusion, or nonfeasance." *Id.*

What is more, the proposed intervenors' burden is particularly heavy because absent a "very strong showing of inadequate representation," it is

33

presumed that a "government agency"—here, the North Carolina Attorney General—adequately represents members of the public seeking to intervene, and intervention is allowed only in "rare cases." 7C Wright & Miller § 1909; *see, e.g.*, *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (a "very compelling showing" is needed to overcome the presumption of the State's adequacy); *Daggett v. Comm'n on Govt'l Ethics & Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999) (government is presumed to represent citizens adequately when it is defending a statute against attack); *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 987 (2d Cir. 1984) (Friendly, J.) (presumption of adequacy only rebutted with a "strong showing" of inadequate representation); *Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982) (presumption of adequacy if applicant and governmental party seek same ultimate objective). Indeed, it could hardly be otherwise, since "[a]cting in a type of representative capacity is a basic governmental function, and the business of the government could hardly be conducted if, in matters of litigation, individual citizens could usually or always intervene and assert individual points of view." 6 Moore's Federal Practice § 24.03[4][a][iv][A] (3d ed. 2011).

The proposed intervenors suggest that the rule that a government agency's defense of statute is presumptively adequate is inconsistent with the law of this circuit. Br. 20. Not so. To be sure, this Court has not explicitly applied this

34

presumption, but it has not rejected it either. Nor has any other court. On the contrary, the presumption is generally accepted by both courts and commentators, as the host of authorities cited above demonstrates. There is no cause needlessly to create a circuit conflict, particularly because the proposed intervenors have failed to articulate any basis for why this Court should not follow the prevailing rule. Indeed, the proposed intervenors' position—which would allow any member of the public to intervene because he believes his "own interests" justify intervention (Br. 20), even though the government is fully litigating the case to achieve precisely the same end—has very little to recommend it. There is no reason to prevent the State agency whose reason for existence is to direct and control the State's litigation from directing and controlling the State's litigation, particularly when the agency's ultimate end is precisely the same as that of the proposed intervenors. *See* N.C. Gen. Stat. § 114-2 (enumerating the duties of the Attorney General).

2. *The proposed intervenors have failed to demonstrate that the Attorney General does not adequately represent their interests*

Regardless of the strength of the presumption, the proposed intervenors do not dispute that they must "demonstrate adversity of interest, collusion, or nonfeasance" by the Attorney General in order to show that they are inadequately represented in this suit. They have failed to make that showing. They contend that they have interests "distinct" from those of the Attorney General, when in fact their interests are precisely the same—to assure the validity and enforcement of the Act.

35

And they assert that the Attorney General has not been litigating this case to their satisfaction, pointing to things they would have done differently. But it is well established that disputes over litigation strategy do not suffice to overcome the presumption of adequate representation. The district court did not abuse its discretion in finding that the Attorney General adequately represents the proposed intervenors' interests, and its judgment should be affirmed.

### a. *The proposed intervenors have shown no adversity of interests*

The proposed intervenors acknowledge that they share three interests in common with the Attorney General: "protecting the psychological health of the patient, preventing coercive abortions, and expressing its preference for the life of the unborn." Br. 21. They contend, however, that they possess two interests "separate and distinct from the State's"—"[e]nsuring that a pregnant woman understands the potential risks and harms to the child so she can make the decision *for the child*," and "preserving the 'civil remedies' granted in § 90-21.88." *Id.* (emphasis in original). Their contentions are meritless.

To begin, even assuming that *any* of the proposed intervenors' stated interests are sufficiently concrete to support intervention—which, as explained, they are not—having interests *distinct* from the Attorney General does not suggest that the interests are *adverse*. In any event, the two interests they single out as supposedly distinct from the Attorney General are in fact not distinct at all, let

36

alone adverse. The first—ensuring that pregnant women fully understand the potential risks and harms of abortion—is a precise restatement of the principal purpose of the Act itself, and obviously is not adverse to the Attorney General's efforts to sustain the Act against constitutional challenge. And to the extent the proposed intervenors can even assert the second interest—preserving the civil remedies in § 90.21.88—it is also fully shared by the Attorney General. As explained earlier, the damages action set forth in § 90.21.88(a) can only be brought by a woman who had an abortion after October 26, 2011, or by the "father of an unborn child that was subject to abortion." N.C. Gen. Stat. § 99-21.88(a). None of the proposed intervenors falls within those categories. Subsection (b) creates a remedy for injunctive relief, and there is some theoretical (though highly speculative) possibility that the Medical Professionals would someday be able to bring suit pursuant to that provision. *See supra* note 7. But another one of the persons specifically allowed to bring a claim for injunctive relief under that provision is *the Attorney General*. N.C. Gen. Stat. § 99-21.88(b)(iii). The Attorney General's interest in preserving this remedy is thus *at least* as strong, if not stronger, than that of the proposed intervenors.

The proposed intervenors also argue that an adversity of interest is demonstrated by the Attorney General's decision not to appeal the district court's partial grant of plaintiffs' motion for a preliminary injunction, asserting that they

37

would have appealed that decision.  Br. 22.  Unlike the Attorney General, the proposed intervenors contend, they not only have an interest in defending the constitutionality of the statute, but of "ensuring its immediate and permanent implementation" so that they can be "afforded the rights and protections created by the Act."  *Id.*  But as explained earlier, the Act does not afford the proposed intervenors either rights or protections.  Regardless, a "mere difference of opinion concerning the tactics with which the litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party or who are formally represented in the lawsuit."  7C Wright & Miller § 1909.  The Attorney General's strategic decision to defend the case to a final judgment rather than appeal a preliminary ruling is entirely reasonable.  Indeed, "[e]ven a decision not to take an appeal is ordinarily within the discretion of the representative," and thus neither renders a party's interests distinct from that of a would-be intervenor, nor justifies intervention.  *Id.*; *see also Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004) (finding adequate representation by the state despite fact that would-be intervenor "has asserted its interest with arguably greater fervor than has the state and would have made different procedural choices, including a decision to appeal").

Finally, the proposed intervenors cite several cases in which this Court allowed intervention as of right based on diversity of interests (Br. 23-26), but

those cases are entirely distinguishable, either because the party and the would-be intervenor did not share the same ultimate objective, and the presumption of adequacy was not triggered, or because that presumption was clearly overcome on the facts of the case. In *United Guaranty Residential Insurance Co. v. Philadelphia Savings Fund Society*, 819 F.2d 473 (4th Cir. 1987), the defendant bank/trustee was charged with protecting mortgages held by the intervenor, but it was *also* charged with protecting mortgages held by others. *Id.* at 476. While the interests of the defendant and the intervenor overlapped insofar as they were protecting the intervenor's mortgages, they could also work at "cross purposes" in the litigation because the defendant could easily decide to prioritize the mortgages of others over those of the intervenor, leaving the intervenor entirely without an advocate. *Id.* There is no remotely similar divergence of interests between the proposed intervenors and the Attorney General in this case, all of whom want the Act upheld against challenge and enforced as written.

The proposed intervenors also rely on *Feller v. Brock*, 802 F.2d 722 (4th Cir. 1986), but again that case does not help them. That suit was brought by apple growers, challenging Department of Labor regulations concerning the rates that must be paid to West Virginia apple pickers. *Id.* at 724. In addition to finding that the intervenors could face economic harm in lowered wages as a result of the suit, this Court found that DOL was not an adequate representative, in part, "in light of

39

DOL's admission at oral argument that on the merits, *it agrees with the growers*."
*Id.* at 730 (emphasis added).  Because DOL had "made clear its intention to argue
against" the position pressed by the intervenors, it obviously did not adequately
represent the intervenors interests.  *Id.*  The facts are not remotely comparable in
this case, where, as the district court found and as the record clearly demonstrates,
the Attorney General has vigorously defended the constitutionality of the Act.

The proposed intervenors also cite dictum in *Feller* stating that "the
government's position is defined by the public interest, as well as the interests of a
particular group of citizens."  *Id.*  That statement is certainly true as far as it goes,
and it can be relevant in a case—such as *Feller*—where the government can
balance various factors and ultimately take a position detrimental to the would-be
intervenor.  But here, the Attorney General cannot weigh any such options.  He can
and does take only one position on the merits, which is precisely the same as that
of the proposed intervenors—that the Act is fully constitutional.  While the
Attorney General as a general matter represents the interests of all citizens of North
Carolina, he emphatically does *not* represent the interests of those citizens opposed
to the Act *in this case*.  On the contrary, he is defending an Act of the North
Carolina Legislature, and thus represents North Carolinians—like the proposed
intervenors—who supported the Act's passage, and who support its enforcement.

Finally, in *In re Sierra Club*, 945 F.2d 776 (4th Cir. 1991), Sierra Club was

40

allowed to intervene in a case challenging the constitutionality of a South Carolina environmental permitting scheme because it had a direct and concrete interest in the litigation itself—Sierra Club was a party to administrative proceedings involving the permits which were the subject of the district court challenge, *id.* at 779—and its interest would often be adverse to that of South Carolina, *id.* at 780, as demonstrated by the fact that the Sierra Club and the state *had already taken opposing positions* on the propriety of permits issued under the challenged litigation, *id.* at 780 n.9.  Indeed, this Court expressly *distinguished* that case from cases, like this one, "involving anti-abortion groups who seek to intervene in suits challenging the constitutionality of statutes regulating abortion."  *Id.* at 779 n.8.

Far from being adverse, the interests of the Attorney General and the proposed intervenors are directly aligned.  No adversity of interest justifies intervention here.

### b.  There is no evidence of nonfeasance

Finally, the proposed intervenors seek to demonstrate purported nonfeasance by the Attorney General as evidence of inadequate representation.  In particular, the proposed intervenors criticize the Attorney General because he: (i) asserted legal arguments but did not adduce evidence at the preliminary injunction stage; (ii) did not appeal the district court's partial grant of a preliminary injunction; and (iii) did not seek to vacate that injunction after the Fifth Circuit's decision in *Texas*

*Medical Providers Providing Abortion Services v. Lakey*, 667 F.3d 570 (5th Cir. 2012).  Br. 27-28.

The criticisms launched by the proposed intervenors show nothing more than tactical disagreements between them and the Attorney General, such as whether it was better to take an immediate interlocutory appeal or to wait until final judgment.  And, as explained, a "mere difference of opinion concerning the tactics with which the litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party or who are formally represented in the lawsuit."  7C Wright & Miller § 1909; *see, e.g.*, *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009); *Jones v. Prince George's Cty.*, 348 F.3d 1014, 1020 (D.C. Cir. 2003).[8]

---

[8] The proposed intervenors cite this Court's unpublished opinion in *JLS, Inc. v. Public Service Comm'n of West Virginia*, 321 F. App'x 286 (4th Cir. 2009), arguing that like the intervenors there, the proposed intervenors here are "more knowledgeable and ha[ve] a stronger personal interest in the subject matter of the litigation."  Br. 28.  The claim that the proposed intervenors are "more knowledgeable" than the Attorney General is wholly unsupported.  The *JLS* Court specified that the intervenors in that case presented facts of which the defendant was unaware.  321 F. App'x at 290-91.  The *JLS* Court also noted that the intervenors in that case brought to the Court's attention an entire line of legal authority relevant and potentially dispositive to the merits of the underlying case which the defendant had ignored.  *Id.* at 291-92.  The proposed intervenors cannot point to anything similar here.  Indeed, there is nothing at all to suggest that the Attorney General is not fully aware of the relevant legal arguments and authority concerning the present constitutional challenge to the Act, or of any relevant factual issues, which the Attorney General is poised to develop during the discovery process.  Further, the intervenors in *JLS* did not simply have a "strong

Indeed, the Attorney General has been consistently and zealously defending the constitutionality of the Act, and his tactics—although the proposed intervenors may not agree with them—are perfectly rational. As the district court explained below, in response to plaintiffs' motion for a preliminary injunction, "the Attorney General's office prepared and filed a detailed, thorough, and substantial brief addressing the legal questions presented by the Plaintiffs' claim for injunctive relief," and at a subsequent hearing, "counsel for the Defendants argued zealously in opposition to the motion for injunctive relief on substantive grounds." J.A. 607. Indeed, the Attorney General *prevailed* in defeating all of plaintiffs' preliminary injunction arguments except their challenge to the "display and real-time view requirement." And as the district court correctly explained, "[w]hile the proposed intervenors may have disagreed with the Defendants' tactical decisions, such a disagreement does not rebut the presumption of adequacy." *Id.* Appellants fault the Attorney General for not having introduced factual evidence at the preliminary injunction stage. But the Attorney General made the reasonable decision that the

---

personal interest" in the subject matter of the litigation. Rather, they had a significant *economic* interest in the outcome of the litigation, not shared by the defendant, that would have been severely harmed by an adverse outcome of the suit. Moreover, their interest risked diverging with the defendant because a settlement by the parties, which would also have been adverse and economically harmful to the intervenor, was a real possibility. *Id.* at 290-91. Here, as explained, the interests of the Attorney General and proposed intervenors are entirely aligned and both are seeking precisely the same result.

43

principal issues at that point were legal, not factual, and that it would focus its resources on mounting a vigorous legal defense of the Act. The proposed intervenors also challenge the Attorney General's failure to appeal the preliminary injunction to this court, and to seek vacatur of the injunction based on the Fifth Circuit's recent decision. But the Attorney General has evidently—and quite reasonably—concluded that the best way to obtain a speedy, final, and successful defense of the Act is not to continue to litigate preliminary matters in the district court and in this Court, but rather to conduct discovery and take the case to a final judgment to answer the constitutional questions. To that end, the Attorney General has since pressed forward into discovery, requesting a "complex" litigation track allowing for seven depositions, and submitting his initial disclosures indicating that he expects to put forth expert witnesses. J.A. 612-16. The proposed intervenors have not presented any plausible basis for finding nonfeasance by the Attorney General.

Accordingly, because the proposed intervenors have not demonstrated any concrete interest in this litigation sufficient to support intervention, and because the Attorney General in any event adequately represents whatever general interests the proposed intervenors may have, the district court's judgment denying intervention should be affirmed.

**C.    If The Court Concludes That The Proposed Intervenors Have A Cognizable Interest Inadequately Represented By The Attorney General, It Should Remand For Consideration Of Whether The Motion For Intervention Was Timely**

A motion to intervene pursuant to Rule 24(a) must be timely.  Fed. R. Civ. P. 24(a).  "Rule 24 is silent as to what constitutes a timely application and the question must therefore be answered in each case by the exercise of the sound discretion of the court."  *Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974); *see Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) ("The determination of timeliness is committed to the discretion of the district court and will not be disturbed on appeal except for an abuse of that discretion."); 7C Wright & Miller § 1916 ("Since the requirement of timeliness is a flexible one, much must necessarily be left to the sound discretion of the court, and the trial judge's decision on the question will be reviewed only for an abuse of discretion.").  If this Court determines that the proposed intervenors have otherwise satisfied the requirements of Rule 24(a), it should remand the case for the district court to consider in the first instance whether their intervention motion was timely. There would be good cause to find that it was not.

The proposed intervenors say almost nothing about the timeliness of their motion, except to note that if allowed to intervene, they could have "joined the litigation before any request for discovery, before the filing or scheduling of any dispositive motions, and before Defendants filed their answer."  Br. 30.  But

45

timeliness requires a consideration of a number of factors, including not only how far the litigation has progressed, but also the movant's prior knowledge of the pending action and the reason for the delay in seeking intervention. *See United States v. Ritchie Special Credit Invs.*, 620 F.3d 824, 832 (8th Cir. 2010). These factors strongly suggest that the proposed intervenors' motion was untimely.

At least some of the proposed intervenors knew of this lawsuit in time to file for intervention before substantial progress was made in the case, yet failed to do so. The filing of this lawsuit was widely reported, but as of at least October 10, 2011, Paul Stam—who knew of the lawsuit as of at least September 30 and attended the October 17 hearing—was in contact with the proposed intervenors' attorney Samuel Casey about this suit.[9] Dr. John Thorp knew of the suit within a week of its filing. J.A. 521 (Stuart Decl. ¶ 5.) And one of the Crisis Pregnancy Centers stated in mid-October that it planned to become involved in the case. J.A. 528 (Cummings Decl. ¶ 17.) Yet the proposed intervenors waited until after the district court had ruled on the preliminary injunction to file their motion.

Courts have held that waiting to intervene until after the grant of a preliminary injunction, or even until the eve of a preliminary injunction hearing, supports denial of intervention. *See Ark. Elec. Energy Consumers v. Middle S.*

---

[9]*See Raw Video: Interview with Rep. Skip Stam*, http://abclocal.go.com/wtvd/video?id=8373240 (video of media interview in which Stam mentions his contact with Casey).

*Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985) (denying motion to intervene filed 12 days after commencement of action where hearing had been held and temporary restraining order issued); *MasterCard Int'l. Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390-91 (2d Cir. 2006) (denying motion to intervene filed on "the eve of the preliminary injuncti[ve] hearing"). It would be well within the district court's discretion to do so here.

## II. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN DENYING PERMISSIVE INTERVENTION, AND THERE IS NO CAUSE TO DISTURB THAT DECISION

The district court properly found that the proposed intervenors do not satisfy the requirements of Rule 24(a). And "[i]f there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b), and even though … the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." 7C Wright & Miller § 1913; *see also Smith*, 352 F.3d at 892 ("Typically, a decision to deny permissive intervention under Rule 24(b) 'lies within the sound discretion of the trial court.'" (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982))). Nothing warrants disturbing that discretion here.

To begin, Rule 24(b) requires that the would-be intervenor have a "claim or defense" that has "a question of law or fact in common" with "the main action." Fed. R. Civ. P. 24(b)(1)(B). And that claim or defense must be based upon a

47

sufficient interest in the litigation. *See Diamond*, 476 U.S. at 77 (O'Connor, J., concurring) (noting that permissive intervention "plainly ... require[s] an interest sufficient to support a legal claim or defense which is 'founded upon [that] interest.'" (quoting *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 459 (1940))). Thus, to justify permissive intervention, the proposed intervenors must demonstrate an "actual, present interest that would permit [them] to sue or be sued . . . in an action sharing common questions of law or fact with those at issue in the litigation." *Id.*

Here, none of the proposed intervenors has an "actual, present interest" that "shar[es] common questions of law or fact" with those at issue in this suit. Indeed, the proposed intervenors do not raise any new claims or defenses. J.A. 570-582. They do not assert any counter- or cross-claims. Their only defenses—failure to state a claim on which relief can be granted, standing, and ripeness (J.A. 581)—are in no way specific to them, and would not entitle them to sue or be sued in this action. If such defenses were sufficient to satisfy Rule 24(b), it is hard to envision a proposed intervenor who could not show that their defense "shares with the main action a common question of law or fact."[10]

---

[10] The proposed intervenors put forth several assertions that they believe qualify as common questions of law and fact. Br. 32. None does. They say that that the Medical Professionals and the Crisis Pregnancy Centers are regulated entities under the Act. They are not, because they do not provide abortion services.

48

In any event, the question of permissive intervention is wholly within the district court's discretion, and even if "there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." 7C Wright & Miller § 1913. Here, the district court reasonably concluded that "intervention would unnecessarily complicate the case and cause undue delay."[11] J.A. 604. After considering the number of intervening

---

They say they are beneficiaries of the Act, but again, they are not—the Act is intended to benefit women contemplating abortions, and regulates physicians that provide them. They say that they have experienced "the great harm to abortion patients caused by failure to follow the informed consent procedures provide[d] for in the Act." *Id.* Whatever the merit of that assertion, it hardly demonstrates a common question of law or fact concerning whether the challenged portions of the Act are constitutional. Finally, they say that they have "a deep-set legal interest[] in seeing the Act fully implemented as quickly as possible." *Id.* But as with all the "legal interests" they assert in this case, this one is simply a general interest in having the Act enforced, which clearly does not qualify as an "actual, present interest that would permit [them] to sue or be sued" in a similar action. *Diamond*, 476 U.S. at 77 (O'Connor, J., concurring).

[11] As proposed intervenors note, plaintiffs pointed out to the district court that allowing the requested intervention "would complicate and delay this case through the introduction of unnecessary evidence." Br. 31. For example, plaintiffs explained that the proposed intervenors flatly misconstrue their rights under the statute and this Court's ruling and have provided volumes of evidence incorrectly claiming that, as a result of the plaintiffs' actions and the district court's preliminary injunction ruling, they will no longer be able to provide information about abortion that they deem accurate and necessary. *See, e.g.*, J.A. 299-300 (Thorp Decl. ¶ 40, asserting that under the district court's decision, he would be prevented from making statements about what he considers to be risks associated with abortion); J.A. 363-364 (Brannon Decl. ¶ 28, same); J.A. 384-385 (McCaffrey Decl. ¶ 28, same). Neither the district court's order nor anything in plaintiffs' challenge, of course, prevents them from providing whatever information they see

49

groups and that they were pursuing the same objectives as the Attorney General, the district court found that "[a]dding three groups of intervenors would necessarily complicate the discovery process and consume additional resources of the court and the parties." J.A. 608. That determination was well within the district court's discretion. It is in the best interest of the parties and of all North Carolinians that the constitutional question raised in this case are resolved sooner rather than later. And to the extent the proposed intervenors believe they have an important perspective to present, they may of course participate in the district court and in this Court as amici curiae. *See, e.g.*, *Bradley v. Milliken*, 828 F. 2d 1186, 1194 (6th Cir. 1987) (proposed intervenors invited to appear as amicus curiae); *Roe v. Casey*, 464 F. Supp. 483, 487 (E.D. Pa. 1978) (denying motion for intervention but allowing an amicus brief), *aff'd*, 623 F.2d 829 (3d Cir. 1980). But, particularly in light of the proposed intervenors' lack of any concrete interest in the litigation and the Attorney General's continued vigorous defense of the Act, the district court's decision to avoid delay in the final resolution of the important

---

fit. Further, the proposed intervenors appear to mistakenly believe that plaintiffs are making a substantive constitutional challenge to the Act's requirement that information about abortion risks be provided before an abortion is performed (N.C. Gen Stat. § 90-21.82), as they seek to join the case so that they can present extensive facts and opinions regarding information they believe should be provided to women before an abortion. *See, e.g.*, J.A. 296-300 (Thorp Decl. ¶¶ 34-41); J.A. 377-386 (McCaffrey Decl. ¶¶ 5-30). Such information would serve only to mire the proceeding in irrelevant material.

50

questions in this case was plainly not an abuse of discretion.[12]

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

## STATEMENT RESPECTING ORAL ARGUMENT

For the reasons set forth above, plaintiffs believe that the district court's judgment can and should be affirmed without oral argument. If this Court, however, believes that more substantial issues are raised that might benefit from a hearing, then oral argument would be warranted.

Respectfully submitted,

/s/ Walter Dellinger

KATHERINE LEWIS PARKER
AMERICAN CIVIL LIBERTIES UNION
OF NORTH CAROLINA LEGAL
FOUNDATION
P.O. Box 28004
Raleigh, North Carolina 27611
(919) 834-3466

WALTER DELLINGER
ANTON METLITSKY
LAURA CONN
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300

ANDREW D. BECK
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, New York 10004
(212) 284-7318

BEBE J. ANDERSON
CENTER FOR REPRODUCTIVE RIGHTS
120 Wall Street, 14th Floor
New York, New York 10005
(917) 637-3687

---

[12] As with intervention motions under Rule 24(a), motions under Rule 24(b) must be timely, Fed. R. Civ. P. 24(b), and timeliness is a question reserved to the district court, *see supra* Part I.C. To the extent this Court disagrees and believes the district court may have abused its discretion in denying permissive intervention, it should still remand for the district court to consider whether their motion was timely under Rule 24(b). *Id.*

51

HELENE T. KRASNOFF
PLANNED PARENTHOOD FED. OF
AMERICA
1110 Vermont Avenue N.W., Suite 300
Washington, D.C. 20005
(202) 978-4800

*Counsel for Plaintiffs*

Dated:  April 9, 2012

## CERTIFICATE OF COMPLIANCE

    1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,598 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

    2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Dated:  April 9, 2012

                            /s/ Anton Metlitsky

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2012, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.


Dated: April 9, 2012

/s/ Walter Dellinger